**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SEALED PLAINTIFF,

Plaintiff,

v.

3:26-CV-2072
(ECC/DJS)

SEALED DEFENDANTS 1-4,

Defendants.

**APPEARANCES:**

SEALED PLAINTIFF
Plaintiff, *Pro Se*
Berkshire, New York 13736

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

Presently pending before the Court is Plaintiff's Motion to Seal Case and Motion for Leave to Proceed Pursuant to Pseudonym (the "Motions"). Dkt. No. 3.[1] In support of those Motions, Plaintiff alleges that "[t]his action involves highly sensitive personal context, including detailed allegations of severe dental disfigurement, medical malpractice injuries, and a highly distorted medical profile." Compl. at ¶ 4; *see also* Dkt.

[1] Also presently pending is the initial review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e) and L.R. 72.3, which will be addressed by separate order.

No. 3 at p. 1 ("[T]he underlying action contains highly sensitive, detailed disclosures regarding a personal medical profile, extensive dental disfigurement, and acute psychological trauma."). Plaintiff further alleges that "[f]orcing the disclosure of Plaintiff's legal identity would expose intimate medical narratives to public electronic tracking, causing severe psychological distress and compounding existing vulnerabilities." Dkt. No. 3 at p. 1. For the reasons set forth below, the Motions (Dkt. No. 3) are **DENIED**.

## I. FACTUAL BACKGROUND

The Complaint alleges that, in or about September 2026, Plaintiff "engaged in constitutionally protected activity under the First Amendment by sending email communications to Defendant Hon. Oliver Blaise III" ("Judge Blaise"). Dkt. No. 1, Compl. at ¶ 12. According to the Complaint, the email communications "contained an explanation of the physical and profound psychological toll caused by severe dental malpractice on Plaintiff's person." *Id.* at ¶¶ 14-15. The Complaint acknowledges that the email communications stated that the disfigurement resulting from the dental malpractice "makes [Plaintiff] want to end his life," but contends that this was "not . . . an immediate statement of intent to commit self-harm or an active threat to any party." *Id.* Further, the email communications allegedly stated: "I own guns and you will never take them from me." *Id.* at ¶ 20.

Thereafter, Defendant New York State Police ("State Police") "initiated a welfare check on the Plaintiff." *Id.* at ¶ 16. The Complaint alleges that, while Plaintiff "verbally informed them that he was completely fine," they "refused to clear the welfare check" and Defendant Dylan Tiefenthaler, an investigator for the New York State Police, "initiated an unconstitutional mental health arrest." *Id.* at ¶¶ 16-19. Further, "an ex parte Temporary Extreme Risk Protection Order" was allegedly executed by Judge Blaise "through another judge . . . , ordering the seizure of Plaintiff's firearms and authorizing an immediate search of his person and his vehicle." *Id.* at ¶ 20.

During his allegedly "unlawful . . . arrest and transport," Plaintiff claims to have suffered injury resulting from him being "physically restrained . . . and placed . . . in handcuffs secured behind his back." *Id.* at ¶¶ 21-24. Specifically, Plaintiff maintains he "had well-documented pre-existing spinal conditions" and that the "mechanics of being restrained with handcuffs behind his back entirely deprived [him] of the ability to brace himself or support his spinal column against the movements, vibrations, and shifts of the police vehicle." *Id.* Plaintiff asserts that this resulted in "sustained severe, acute physical injuries, including a diagnosed L5-S1 lumbar disc herniation and undiagnosed severe exacerbation of his upper spinal disc injuries." *Id.* Plaintiff further alleges that he was "left . . . in a state of debilitating, excruciating pain, rendering him fundamentally unable to walk or ambulate without enduring severe and constant physical agony." *Id.* at ¶ 25.

According to the Complaint, Plaintiff was then brought to a hospital where he was "held . . . against his will for eight (8) hours" before a "psychiatric evaluation" was conducted. *Id.* at ¶¶ 26-28. The Complaint asserts that this "exceeded the strict six-hour statutory limit mandated for emergency evaluations . . . , resulting in an unlawful imprisonment." *Id.* at ¶ 29.

In addition to naming Blaise, State Police, and Tiefenthaler as Defendants, the Complaint names "John Doe State Trooper 1" ("State Trooper"), who was allegedly "employed by [Defendant] State Police . . . and participated in the physical arrest and transport of the Plaintiff." *Id.* at p. 1 & ¶¶ 8-11. The Complaint brings claims pursuant to 42 U.S.C. § 1983 for First Amendment retaliation, unlawful arrest and false imprisonment, and deprivation of Second and Fourteenth Amendment rights, as well as state law claims for personal injury, negligence, and battery. *Id.* at pp. 4-5.

## II. MOTION TO SEAL

"It is well-settled that there exists a common-law right of access to judicial records" and "'that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lora v. Doe*, 2026 WL 2874177, at *1 (N.D.N.Y. Sept. 23, 2026) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)) (citations omitted). "The burden of demonstrating that case records should be sealed rests on the party seeking such action."

*Id.* (citation omitted). "[I]n situations in which there exists a qualified First Amendment right of access to the judicial documents at issue, a court may only seal the documents 'if specific, on the record findings are made demonstrating the closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d at 120).

Here, "[b]ecause the documents at issue (and, by extension, the docket) are judicial documents, they may be maintained under seal only if [Plaintiff, as the movant,] is able to overcome the presumption in favor of public access." *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 72 (S.D.N.Y. 2015) (citing cases). Plaintiff's argument for sealing is that the presumption of public access to judicial documents is overcome because "public exposure of his highly sensitive medical history and emergency department documents would lead to immediate, irreparable harm to his character, future liberties, and personal safety." Dkt. No. 3 at p. 2. These "conclusory invocations of harm . . . are plainly inadequate to overcome the presumption in favor of public access." *Lenart v. Coach Inc.*, 131 F. Supp. 3d at 72 (citing cases). "In light of the foregoing, . . . [P]laintiff has not met his burden of demonstrating that 'the most compelling reasons' exist and dictate that the entire record in this action should be sealed from public view." *Lora v. Doe*, 2026 WL 2874177, at *1 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d at 123).

Accordingly, Plaintiff's Motion to Seal is denied at this time, and the Clerk shall unseal the docket.

**III. MOTION TO PROCEED PURSUANT TO PSEUDONYM**

Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties." FED. R. CIV. P. 10(A). "A party seeking to proceed under pseudonym bears a heavy burden, and will only be allowed to do so if private interests outweigh the countervailing public interest in full disclosure." *Doe v. Colgate Univ.*, 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016) (citation omitted). The Second Circuit has provided a non-exhaustive list of factors to consider in balancing a plaintiff's interest in anonymity against the public interest in disclosure and any prejudice against defendants. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008). Those factors are as follows:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his [or her] age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his [or her] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been

> kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his [or her] identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (quotations, internal quotation marks, and citations omitted). Application of these factors to the particular facts of a case "is left to the sound discretion of the district court." *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, 2012 WL 5899331, at *4 (S.D.N.Y. Nov. 26, 2012) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190)).

**A. Factor 1: Matters of Highly Sensitive and Personal Nature**

The first factor concerns "whether the litigation involves matters that are highly sensitive and [of a] personal nature." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190 (quotation, internal quotation marks, and citations omitted) (alteration in original). Plaintiff argues that the Complaint involves allegations of a highly sensitive and highly personal nature, including discussion of Plaintiff's "personal medical profile, extensive dental disfigurement, and acute psychological trauma." Dkt. No. 3 at p. 1. However, while information about Plaintiff's dental disfigurement and psychological trauma may indeed be relevant to this action, the significance of that information to Plaintiff's claims is somewhat unclear. The first cause of action for First Amendment retaliation would instead appear to focus on an email communication that Plaintiff sent to Judge Blaise and the mental health arrest that followed. Compl. at p. 4. Likewise, the third cause of action

for deprivation of Second and Fourteenth Amendment rights pertains to Plaintiff's assertion that his guns were unconstitutionally seized, and does not appear to relate to Plaintiff's medical information. *Id.* This factor, therefore, weighs slightly but not wholly in favor of granting the Motion to Proceed Pursuant to Pseudonym.

**B. Factors 2, 3, and 7: Resulting Harm, Severity of the Harm, and Confidentiality**

Factors two and three focus on the harm that identification would cause Plaintiff. The relevant inquiry for these factors is "whether disclosure of the plaintiff's name in the course of the lawsuit would 'uniquely' cause harm and 'how grave the resultant harm would prove to be.'" *Doe 1 v. Branca USA, Inc.*, 2022 WL 2713543, at *2 (S.D.N.Y. July 13, 2022) (quoting *Rapp v. Fowler*, 537 F. Supp. 3d 521, 529 (S.D.N.Y. 2021)). "[P]laintiff must establish with sufficient specificity the incremental injury that would result from disclosure of h[is] identity." *Doe v. Freydin*, 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021) (citing cases). Conclusory statements regarding harm are of "limited utility." *Rapp v. Fowler*, 537 F. Supp. 3d at 530. Where a plaintiff claims that disclosure will harm his or her mental health, courts in the Second Circuit look for corroboration from medical professionals that detail the risk to plaintiff. *See*, *e.g.*, *Doe v. Weinstein*, 484 F. Supp. 3d 90, 95 (S.D.N.Y. 2020) ("Without corroboration from medical professionals . . . [plaintiff's] general allegation of potential trauma is 'mere speculation'

about a risk of psychological injury that cannot support h[is] motion to proceed under a pseudonym.").

Here, Plaintiff makes conclusory assertions that denying his Motion to Proceed Pursuant to Pseudonym would "caus[e] severe psychological distress." Dkt. No. 3 at p.1. Plaintiff's claims are made generally and without medical corroboration, and he has not identified any particularized harm that would result from publicly disclosing his identity. *See generally id.* The Court thus finds that factors two and three weigh somewhat against granting the Motion to Proceed Pursuant to Pseudonym.

The seventh factor "inquires as to the status of a plaintiff's confidentiality thus far in the litigation." *Doe v. Skyline Auto. Inc.*, 375 F. Supp. 3d at 407. Here, thus far, Plaintiff has sought to protect his anonymity. This factor thus weighs in favor of granting the Motion to Proceed Pursuant to Pseudonym.

**C. Factor 4: Vulnerability**

The fourth factor requires courts to determine "whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190 (citations omitted). Age is a critical factor in making this determination because "courts have been readier to protect the privacy interest of minors in legal proceedings than of adults." *Rapp v. Fowler*, 537 F. Supp. 3d at 530 (quotation and internal quotation marks omitted). Consequently, "[i]f a plaintiff is

not a child, this factor weighs against a finding for anonymity." *Id.* (quotation and internal quotation marks omitted). Because Plaintiff is an adult and "provides no evidence that h[is] age makes h[im] particularly vulnerable to the possible harms of disclosure," the fourth factor weighs against allowing Plaintiff to proceed anonymously in this matter. *Doe v. Skyline Auto. Inc.*, 375 F. Supp. 3d at 406; *see also Rapp v. Fowler*, 537 F. Supp. 3d at 530.

**D. Factors 5, 8, and 9: Public Interest**

Factors five, eight, and nine all relate to the public's interest in knowing Plaintiff's identity. The fifth factor considers "whether the suit . . . challeng[es] the actions of the government or that of private parties." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190 (citation omitted). Here, Defendants are government employees. "When a lawsuit challenges governmental actions, actors, or policies, the plaintiff has a strong interest in proceeding anonymously." *Doe v. Rensselaer Polytechnic Inst.*, 2019 WL 13472598, at *3 (N.D.N.Y. Aug. 21, 2019) (quoting *Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *6 (N.D.N.Y. Sept. 10, 2018), *report and recommendation adopted*, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020)) (internal quotation marks and citations omitted). This factor thus favors Plaintiff.

"The eighth factor weighs whether the public's interest in the litigation is furthered by revelation of the plaintiff's identity." *Doe v. Leonelli*, 2022 WL 2003635, at *4

(S.D.N.Y. June 6, 2022). The public generally has a strong interest in knowing the underlying facts of a litigation, including the identities of litigants. *See*, *e.g.*, *id.* ("[T]he public has a significant interest in open judicial proceedings and the public's interest in the litigation is furthered by transparency, including exposure of the parties' identities."). "The Court notes, however, that the public generally does not have a significant interest in the intricacies of discovery in civil litigation." *Doe v. New York State Off. of Mental Health*, 2026 WL 113680, at *3 (N.D.N.Y. Jan. 15, 2026) (citation omitted).

"The ninth factor looks to whether, because of the purely legal nature of the issues presented, there is an atypically weak public interest in knowing the litigants' identities." *Rapp v. Fowler*, 537 F. Supp. 3d at 532. This action does not involve a purely legal issue. The allegations here are factual in nature, involving "particular actions and incidents." *Doe v. Weinstein*, 484 F. Supp. 3d at 98 (internal quotation marks and citation omitted). Thus, "open proceedings . . . benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, 2012 WL 5899331, at *8.

Accordingly, the public interest factors weigh slightly against anonymity in this action.

**E. Factor 6: Prejudice to Defendant**

Factor six requires the Court to analyze the prejudice Defendant would face if Plaintiff is permitted to proceed anonymously. "Courts will examine the reputational damage to defendant[], difficulties conducting discovery, and fundamental fairness of proceeding anonymously." *Doe v. Townes*, 2020 WL 2395159, at *5 (S.D.N.Y. May 12, 2020) (citation omitted).

It is possible that "allowing Plaintiff to proceed under a pseudonym would . . . impede Defendants' ability to investigate Plaintiff's allegations or to conduct initial discovery." *Contra Roe v. Does 1-11*, 2020 WL 6152174, at *3 (E.D.N.Y. Oct. 14, 2020). Additionally, "courts have also considered the later stages of a case and recognized the danger that cross-examination of an anonymous plaintiff could be compromised and the risk that a jury would not be able to properly assess the credibility of a plaintiff proceeding under a pseudonym." *Id.* (citing *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016)). "Allowing a plaintiff to proceed anonymously may also hamper witnesses coming forward of their own volition to either bolster or refute a plaintiff's allegations." *Id.* (citing *Doe v. Delta Airlines, Inc.*, 310 F.R.D. at 225).

This factor thus weighs against Plaintiff.

### F. Factor 10: Alternative Mechanisms

Finally, factor ten "examines whether there are other mechanisms, including sealing, redaction of documents, protective orders and confidentiality agreements, that could protect the plaintiff's confidentiality." *Doe v. Combs*, 2024 WL 863705, at *5 (S.D.N.Y. Feb. 29, 2024). Here, it is possible that a protective order and/or confidentiality agreement could ameliorate some of Plaintiff's concerns with respect to revelation of his medical profile. This factors thus weighs against Plaintiff.

Having considered the relevant factors in their totality, and having found that most of them weigh against the Plaintiff, the Court concludes that the appropriate course of action at this juncture is to deny Plaintiff's Motion to Proceed Pursuant to Pseudonym.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion to Seal Case and Motion for Leave to Proceed Pursuant to Pseudonym (Dkt. No. 3) is **DENIED**; and is further

**ORDERED**, that Plaintiff file an Amended Complaint containing his proper name within thirty (30) days from the date of this Order; and it is

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Dated: November 23, 2026
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge